**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHELLY CONTE, an individual; CINDY REICHMAN, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> JAKKS PACIFIC, INC., a Delaware corporation, and DOES 1 TO 25, <br><br> Defendants. | 1:12-CV-00006-LJO-GSA <br><br> **ORDER ON MOTION TO DISMISS** <br> (Docs. 42, 44, 45) |
| JAKKS PACIFIC, INC., a Delaware corporation, <br><br> Counter-Claimant, <br><br> v. <br><br> SHELLY CONTE, an individual; and CINDY REICHMAN, an individual, <br><br> Counter-Defendants. | |

**INTRODUCTION**

Plaintiffs Shelly Conte and Cindy Reichman (collectively "Plaintiffs") have brought an action for patent infringement against Defendant Jakks Pacific, Inc. ("Defendant" or "Jakks"). Jakks has filed counterclaims against Plaintiffs. Now pending before the Court is Plaintiffs' motion to dismiss four of Jakks' five counterclaims. Jakks opposed the motion, and Plaintiffs have filed a reply. Upon careful consideration of the parties' submissions and the entire record in this case, the Court GRANTS in part with leave to amend and DENIES in part Plaintiffs' motion to dismiss.

1

**BACKGROUND**

**A. Facts**

Plaintiffs are the exclusive licensees of all right, title, and interest in United States Patent No. 6,494,457 ("the '457 Patent") issued by the United States Patent and Trademark Office on December 17, 2002. The '457 Patent relates to (1) an object that is capable of being hidden, (2) a transmitter unit associated with the hidden object, and (3) a seeker unit containing a receiver and a means for calculating the distance between the seeker unit and the transmitter unit. Plaintiffs have incorporated the patent into a toy doll that they manufacture, "Hide-N-Seek Hayley," which allows a child to play an interactive game of hide and seek by relaying clues to the child based on his or her proximity to the doll.

In or around 2005, Jakks began marketing Care Bear dolls under license from the owner of the Care Bears trademark. One of these Care Bear dolls marketed by Jakks is the "Hide 'N Seek Care Bear" doll. Plaintiffs contend that the Hide 'N Seek Care Bear doll infringes Plaintiffs' '457 patent. Like the Hide-N-Seek Hayley, the Hide 'N Seek Care Bear consisted of: (1) a plush toy doll capable of being hidden; (2) a transmitter device attached to the toy doll; and (3) a seeker unit capable of receiving various clues depending on its proximity to the toy doll.

On or about December 22, 2010, Plaintiffs, through counsel, sent a letter ("the December 22 letter") to several of Jakks' customers, including Toys 'R Us and Target, through whom Jakks was marketing Hide 'N Seek Care Bear dolls. The letter stated that "[t]he concept and design for [Hide 'N Seek Care Bear] and its capabilities are nearly identical to those of Hide 'N Seek Hayley, which is patented, trademarked, and copyrighted to Ms. Shelly Conte and Ms. Cindy Reichman" and requested that the stores provide sales information for the Care Bear toys.

**B. Procedural History**

Plaintiffs filed their original complaint in this case on December 20, 2011. They filed an amended complaint on April 3, 2012. Defendant Jakks filed an answer and counterclaims on August 13, 2012. Plaintiffs filed the instant motion to dismiss four of Jakks' five counterclaims on September 27, 2012. Defendant Jakks filed an opposition on November 5, 2012, and Plaintiffs filed a reply on November 13, 2012.

Plaintiffs and Defendant have also engaged in other litigation relating to Jakks' alleged infringement of Plaintiffs' '457 patent. Relevant to the instant motion, Jakks previously brought action against plaintiffs Conte and Reichman in district court in New Jersey seeking declaratory relief. On December 30, 2011, the New Jersey district court granted Conte and Reichman's motion to dismiss for lack of personal jurisdiction over them. *Jakks Pacific v. Conte and Reichman*, 2011 WL 6934856 (Dec. 30, 2011).

Having considered the parties' arguments and the relevant law, this Court issues this order.

## DISCUSSION

### Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

**A. Legal Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Thus, "bare assertions...amount[ing] to nothing more than a 'formulaic recitation of the elements'...are not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951.  A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

With these standards in mind, this Court turns to Plaintiffs' challenges to the allegations in Defendant's counterclaims.

**B. Defamation**

Defendant asserts a claim for defamation against Plaintiffs for sending the December 22 letter to Defendant's customers.  Plaintiffs argue that the issue of whether the December 22 letter gave rise to actionable defamation was decided by the New Jersey district court's opinion granting Plaintiffs' motion to dismiss for lack of personal jurisdiction in the related litigation.  Plaintiffs further argue that the New Jersey court's determination of the December 22 letter as a cease-and-desist letter means the letter is "non-actionable opinion."  The Court disagrees.

**1. Collateral Estoppel**

Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. *Lucido v. Superior Court*, 51 Cal.3d 335, 342 (1990).  The Supreme Court of California has articulated

the test for the application of doctrine as follows:

> Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. The party asserting collateral estoppel bears the burden of establishing these requirements.

*Id.* (internal citations omitted).

The issue of whether the December 22 letter constitutes defamation was neither litigated nor decided in the New Jersey proceeding. The issue before the New Jersey district court was "whether this Court's exercise of jurisdiction [over Conte and Reichman] would be consistent with the requirements of due process." *Jakks Pacific v. Conte and Reichman*, 2011 WL 6934856 at *5. The New Jersey court, through a two-step inquiry, answered in the negative. The court first determined whether the December 22 letter was a cease-and-desist letter. Then, having found the letter to be a cease-and-desist letter, the court considered whether it may exercise specific jurisdiction over Conte and Reichman on the basis of that letter. *Id*. at *4-*6. In finding the December 22 letter to be a cease-and-desist letter, the court never mentioned, let alone decided, whether the letter was defamatory. *Id*. at *3-*4. Likewise, in determining that it was unable to exercise specific personal jurisdiction on the basis of the December 22 letter, the New Jersey court neither considered nor decided whether the letter constituted defamation. The court reached its conclusion because cease-and-desist letters alone do not suffice to justify personal jurisdiction, Conte and Reichman had not engaged in other activities in New Jersey relating to enforcing or defending the validity of their patent, and the principles of fair play and substantial justice allow Conte and Reichman, as patentees, to inform others of their patent rights without being subjected to jurisdiction in a foreign forum. *Id*. at *5-7. Nowhere in its analysis does the court determine whether the December 22 letter was defamatory.

In a footnote, the New Jersey court distinguished a case where a district court in

5

Pennsylvania determined that it could exercise personal jurisdiction over a defendant based on defamatory statements she made about the plaintiff which were then republished in an affidavit. *Id*. at note 11 (citing *Giusto v. Ashland Chemical Co*., 994 F.Supp. 587 (E.D.Pa.1998). The New Jersey court did not find *Giusto* to be analogous because the language in the December 22 letter is significantly different from the alleged defamatory statements at issue in *Guisto*, and because a cease-desist letter is distinguishable from "an affidavit littered with defamatory comments." *Id*. However, finding the language at issue to be distinguishable from alleged defamatory language in another case is different from finding that the language at issue is not defamatory. Likewise, distinguishing a cease-and-desist letter from an affidavit "littered with defamatory comments" does not mean that cease-and-desist letters categorically cannot be defamatory. Nor does it mean that the letter at issue is not defamatory. Rather, the New Jersey court properly declined to determine whether the December 22 letter was defamatory as such a determination was not necessary to decide the jurisdictional issue before it. *Id*. at *7 ("Accordingly, *without more*, this Court is unable to conclude that it may exercise specific personal jurisdiction on the basis of [Conte and Reichman]'s December 22, 2010 letter.") (emphasis added).

Therefore, Plaintiffs fail to meet their burden of establishing the requirements for collateral estoppel.

**2. Non-Actionable Opinion**

Defamation is an invasion of the interest in reputation. *Ringler Associates Inc. v. Maryland Cas. Co*., 80 Cal.App.4th 1165 (Cal. Ct.App. 2000). The elements of the tort are (1) the intentional publication of a statement of fact (2) which is false and unprivileged and (3) has a natural tendency to injure or which causes special damage. *Id*. Publication need not be to the public or a large group; communication to a single individual is sufficient. *Id*. While the statement generally must be of fact rather than opinion, a statement of opinion may nevertheless be actionable "if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Id*. (citing *Okun v. Superior Court*, 29 Cal.3d 442, 451–452, (1981)). "If a statement of opinion implies a knowledge of *facts* which may lead to a defamatory conclusion, the implied facts must themselves be true." *Ringler Associates Inc. v. Maryland Cas. Co*., 80 Cal.App.4th at 1181 (emphasis in the original). "In such a case, the dispositive

question is whether a reasonable factfinder could conclude the published statements *imply* an assertion of defamatory *fact*." *Id.* (emphasis in the original). If so, the defendant must prove the fact is true. *Id.*

The tone of the December 22 letter is factual, and it mostly consists of statements of fact. The letter introduces the law firm representing Plaintiffs Conte and Reichman and states that the representation relates to intellectual property matters with their Hide 'N Seek Hayley dolls. The letter states that Jakks is selling a Hide 'N Seek Care Bear toy. The letter goes on to state that "[t]he concept and design of [the Hide 'N Seek Care Bear] and its capacities are nearly identical to those of Hide 'N Seek Hayley, which is patented, trademarked, and copyrighted to Ms. Shelly Conte and Ms. Cindy Reichman." The letter then requests that the recipient customer, who the law firm believes is selling or recently had sold Hide 'N Seek Care Bear toys, to provide sales data for those toys. The December 22 letter is a communication from attorneys retained by the owners of the intellectual property associated with a toy, in connection with that intellectual property, to ask distributors for an accounting of the sales of another toy using "nearly identical" intellectual property. While Plaintiffs may argue that the "nearly identical" statement is only an opinion, that statement, in the context of the entire December 22 letter, reasonably implies that the Hide 'N Seek Care Bear toy somehow infringes on the intellectual property rights associated the Hide 'N Seek Hayley toy. Overall, the letter implies that Jakks had incurred exposure or that Conte and Reichman are entitled to a remedy, and Plaintiffs' attorney is trying to determine the amount of that exposure or remedy. Those implications are assertions of defamatory facts about Jakks. *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th at 1181. Further, Plaintiffs cannot, at the pleading stage, prove that any of those implied facts is true.

Accepting as true all factual allegations in the counterclaims, viewing the pleadings in the light most favorable to Defendant Jakks, and drawing all reasonable inferences in favor of Jakks, Jakks has alleged the required elements to state a claim for defamation against Plaintiffs Conte and Reichman.

For these reasons, Plaintiffs' motion to dismiss Defendant's second counterclaim for defamation is DENIED.

**C. Interference with Contract and Business Relations**

In its third and fourth counterclaims, Defendant alleges causes of action for interference with

contract and with business relations, respectively, against Plaintiffs. Plaintiffs contend that, to prevail on either claim, it must be shown that Plaintiffs acted in "absence of privilege or justification." (Doc. 42 at 9). Plaintiffs argue that they were "certainly justified" in sending the December 22 letter to Jakks' customers who had sold or were currently selling Jakks' allegedly infringing products. They further argue that Defendant's counterclaims for interference with contract and with business relations must fail as a matter of law due to failure of the "absence of justification" element. *Id*. at 10. This Court disagrees with Plaintiffs' legal analysis.

1. **Interference with Contract**

Under California law, the elements a claimant must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between claimant and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach of disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Quelimane Company, Inc. v. Stewart Title Guaranty Company*, 19 Cal.4th 26 (1998). Unlike interference with prospective economic advantage, "it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." *Id*. at 55. Moreover, the tort of intentional interference with performance of a contract does not require that the actor's primary purpose be disruption of the contract. *Id*. at 56.

The parties do not dispute that Jakks had valid contracts with recipients of the December 22 letter, or that Plaintiffs knew of the contractual relationship. Defendant Jakks alleges that Plaintiffs sent the December 22 letter to Jakks' customers "for the express purpose of interfering with Jakks' relationships with its customers." (Doc. 37 ¶ 95). Plaintiffs argue that they sent the December 22 letter to put Jakks' customers on notice that they were selling a product that is "nearly identical to the design and concept of a product that is patented, trademarked, and copyrighted" to Plaintiffs. (Doc. 45 at 5). However, interference with performance of a contract does not require that Plaintiffs' primary purpose be disruption of the contract. *Quelimane Company, Inc. v. Stewart Title Guaranty Company*, 77 Cal.Rptr.2d 726. In addition, Plaintiffs sent the letter to Jakks' customers after unsuccessful attempts to enter into a licensing agreement with Jakks and "getting repeatedly ignored by [] Jakks[.]" *Id*. Jakks further alleges that Plaintiffs induced Jakks' customers to repudiate their existing contractual

8

obligations and that, as a result of receiving Plaintiffs' December 22 letter, some of Jakks' customers have already demanded indemnification and defense from Jakks. (Doc. 37 ¶¶ 94, 83). Jakks also claims to have suffered damages in an amount to be determined at trial, but no less than $1 million, as a result of Plaintiffs' actions. (Doc. 37 ¶ 97). Accepting as true all factual allegations in the counterclaims, viewing the pleadings in the light most favorable to Defendant Jakks, and drawing all reasonable inferences in favor of Jakks, Jakks has alleged the required elements to state a claim for intentional interference with contractual relations.

For these reasons, Plaintiffs' motion to dismiss Jakks' intentional interference with contractual relations cause of action for failure to state a claim is DENIED.

**2. Interference with Business Relation**

Under California law,[1] the elements of intentional interference with prospective economic advantage are (1) an economic relationship between the claimant and some third party, with the probability of future economic benefit to the claimant; (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the claimant proximately caused by the acts of the defendant. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003) (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 378 (1995)). The Supreme Court of California has clarified that the third element requires the claimant to plead and prove that the defendant's acts are wrongful apart from the interference itself. *Id.* (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* 11 Cal.4th 376, 380 (1995)).

The parties do not dispute that Jakks had economic relationships with the recipients of the December 22 letter, that Plaintiffs were aware of those relationships, or that Plaintiffs sent the December 22 letter to Jakks' customers. Defendant Jakks alleges that Plaintiffs sent the December 22 letter to Jakks' customers "for the express purpose of interfering with Jakks' relationships with its customers." (Doc. 37 ¶ 102). Defendant alleges that the December 22 letter also constitutes tortious

---

[1] Plaintiffs articulate and base their arguments on the definition of intentional interference with prospective economic advantage under Nevada law. (Doc. 45 at 7). Plaintiffs give no reason why Nevada law should apply here instead of California law. Accordingly, California tort law governs, and, to the extent Plaintiffs base their arguments on Nevada law that is distinguishable from California law, their arguments fail.

9

defamation. Jakks further alleges that Plaintiffs damaged Jakks' reputation among its customers, induced Jakks' customers to refrain from engaging in future business and contractual relations with Jakks, and that, as a result of receiving Plaintiffs' December 22 letter, some of Jakks' customers have already demanded indemnification and defense from Jakks. (Doc. 37 ¶¶ 101, 94, 83). Jakks also claims to have suffered damages in an amount to be determined at trial, but no less than $1 million, as a result of Plaintiffs' actions. (Doc. 37 ¶ 97). Accepting as true all factual allegations in the counterclaims, viewing the pleadings in the light most favorable to Defendant Jakks, and drawing all reasonable inferences in favor of Jakks, Jakks has alleged the required elements to state a claim for intentional interference with prospective economic advantage.

For these reasons, Plaintiffs' motion to dismiss Jakks' intentional interference with prospective economic advantage cause of action for failure to state a claim is DENIED.

**E. Unfair Competition in Violation of California Business and Professions Code § 17200**

Finally, Defendant Jakks asserts a cause of action for unfair business competition pursuant to Business and Professions Code § 17200.[2] The unfair competition law ("UCL") covers a wide range of conduct. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th at 1143. "It embraces anything that can properly be called a business practice and that at the same time is forbidden by law." *Id*. citing *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal.4th 163, 180 (1999). "Section 17200 borrows violations from other laws by making them independently actionable as unfair competitive practices." *Id*. at 1144 (citations omitted). "In addition, under section 17200, a practice may be deemed unfair even if not specifically proscribed by some other law." *Id*. (citations omitted). However, "[w]hile the scope of conduct covered by the UCL is broad, its remedies are limited." *Id*. "A UCL action is equitable in nature; damages cannot be recovered." *Id*. (citing *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992)).

Here, Jakks' fifth counterclaim, for unfair competition, borrows from the torts of defamation, intentional interference with contractual relations, and intentional interference with business relations. However, assuming that a claim under the UCL may be predicated on these violations of common law,

---

[2] Business and Professions Code § 17200 states: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

Jakks' counterclaim impermissibly seeks damages as a remedy under the UCL: "As a result, Jakks is entitled to damages to the maximum extent permitted by statute." (Doc. 37, ¶ 110).

Because Defendant only seeks a remedy that is not recoverable in actions under the UCL, Plaintiffs' motion to dismiss Defendant's unfair competition counterclaim for failure to state a claim is GRANTED WITH LEAVE TO AMEND.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DENIES Plaintiffs Conte and Reichman's motion to dismiss Defendant Jakks' counterclaims for defamation, intentional interference with contractual relations, and intentional inference with prospective economic advantage; and

2. GRANTS WITH LEAVE TO AMEND Plaintiffs Conte and Reichman's motion to dismiss Defendant Jakks' counterclaim for unfair competition in violation of Business & Professions § 17200.

Defendant shall have one opportunity to file and serve amended counterclaims in an attempt to cure the deficiencies described herein. Any such amended counterclaims shall be filed and served within 20 days of electronic service of this order. Defendant is not afforded leave to alter any other aspect of his counterclaims. Plaintiffs no later than 20 days after service of the amended counterclaims shall file a response thereto.

IT IS SO ORDERED.

Dated: **December 10, 2012**           **/s/ Lawrence J. O'Neill**
                                       UNITED STATES DISTRICT JUDGE