**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHELLY CONTE, an individual; CINDY REICHMAN, an individual,<br><br>          Plaintiffs,<br><br>     v.<br><br>JAKKS PACIFIC, INC., a Delaware corporation, and DOES 1 TO 25,<br><br>          Defendants. | 1:12-CV-00006-LJO-GSA<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT**<br>(Docs. 69, 70, 87) |

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

**INTRODUCTION**

Plaintiffs Shelly Conte and Cindy Reichman (collectively "Plaintiffs") bring this action for patent infringement against Defendant Jakks Pacific, Inc. ("Defendant" or "Jakks"). Jakks filed

1

counterclaims against Plaintiffs for declaratory relief and for common law violations. Plaintiffs and Jakks each have filed a motion for summary adjudication of the infringement claims. Plaintiffs also move this Court for leave to amend Plaintiffs' first amended complaint. Upon careful consideration of the parties' submissions and the entire record in this case, the Court DENIES Plaintiffs' motion for summary adjudication and GRANTS Jakks' motion for summary adjudication. The Court also DENIES WITH PREJUDICE Plaintiffs' motion to amend the operative complaint.

## BACKGROUND

### A. Facts

Plaintiffs are the exclusive licensees of all right, title, and interest in United States Patent No. 6,494,457 ("'457 patent") issued by the United States Patent and Trademark Office on December 17, 2002. The '457 patent relates to (1) an object that is capable of being hidden, (2) a transmitter unit associated with the hidden object, and (3) a seeker unit containing a receiver with means for calculating the distance between the seeker unit and the transmitter unit and changes in that distance. The '457 patent contains fifteen claims.

Plaintiffs have incorporated the patent into a toy doll that they manufacture, "Hide-N-Seek Hayley," which allows a child to play an interactive game of hide-and-seek by relaying clues to the child based on his or her proximity to the doll.

In or around 2005, Jakks began marketing Care Bear dolls under license from the owner of the Care Bears trademark. One of these Care Bear dolls marketed by Jakks is the "Hide 'N Seek Care Bear" doll. Plaintiffs contend that the Hide 'N Seek Care Bear doll infringes Plaintiffs' '457 patent. The Hide 'N Seek Care Bear consisted of: (1) a plush toy doll capable of being hidden; (2) a transmitter device attached to the toy doll; and (3) a seeker unit capable of receiving various clues depending on its proximity to the toy doll. Plaintiffs claim that Defendant's Care Bear doll directly infringes Plaintiffs' '457 patent.

### B. Procedural History

Plaintiffs filed their original complaint in this case on January 3, 2012. They filed an amended complaint on April 3, 2012. On June 19, 2012, this Court granted in part and denied in part Defendant's motion to dismiss Plaintiffs' amended complaint. Defendant filed an answer and

counterclaims on August 13, 2012. On December 10, 2012, this Court granted in part and denied in part Plaintiffs' motion to dismiss Defendant's counterclaims. Defendant filed amended counterclaims on December 13, 2012, and Plaintiffs filed an answer on January 2, 2013. On August 29, 2013, and August 30, 2013 Plaintiffs and Defendant respectively filed the instant motions for summary adjudication as to the direct infringement claims in Plaintiffs' amended complaint.[1] Plaintiffs and Defendant filed respective oppositions on September 26, 2013 and replies on October 3, 2013. On October 29, 2013, Plaintiffs filed a motion for leave to amend the first amended complaint.

## DISCUSSION

### Motion for Summary Judgment

**A.    Legal Standard**

Fed .R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita*, 475 U.S. at 587. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–

---

[1] This Court previously granted Defendant's motion to dismiss Plaintiffs' indirect infringement claim. Defendant's counterclaims are not a part of this summary judgment proceeding.

3

252.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); *see, High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–1103; *see, Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see, High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see, Celotex*, 477 U.S. at 322. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). "The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

"In cases that involve ... multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also, Robi v. Five Platters*, Inc., 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

**B.  Analysis**

Each party moves this Court to grant summary adjudication in its favor as to Plaintiffs' direct infringement claims. Plaintiffs argue that Defendant's Care Bear doll directly infringes on Claim 9 of Plaintiffs' '457 patent. Specifically, Plaintiffs allege that the Care Bear doll infringes the "calculating means" element of Claim 9. Defendant asserts that said element of Claim 9 of Plaintiffs' '457 patent is invalid as obvious. Defendant further argues that Defendant's Care Bear doll does not directly infringe on Claim 9.

**1.  Obviousness**

The Patent Act makes clear that "[a] patent shall be presumed valid" and that "[t]he burden of establishing in-validity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. "[A]n invalidity defense [must] be proved by clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011).

Under 35 U.S.C. § 103, a patent is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." A determination of "obviousness" rests upon the following factual findings: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, including commercial success, long felt but unsolved needs, and failure of others (collectively, the "*Graham* factors"). *Graham v. John Deere Co*., 383 U.S. 1, 17 (1966).

5

Though a court must base its obviousness determination on these factual findings, the question of whether a patent is obvious is ultimately a question of law. *KSR Int'l v. Teleflex Inc.*, 550 U.S. 398, 427 (2007); *Graham*, 383 U.S. at 17.

"The claims of a patent must 'particularly (point) out and distinctly (claim) the subject matter which the applicant regards as his invention.'" *Palmer v. Orthokinetics, Inc.*, 611 F.2d 316, 322 (9th Cir. 1980) (quoting 35 U.S.C. § 112). "'Courts can neither broaden nor narrow the claims to give the patentee something different from what he has set forth.'" *Id.* (quoting *Autogiro Co. v. United States*, 384 F.2d 391, 396 (1967)).

### i.   "Calculating means" element

As discussed above, the '457 patent relates to (1) an object that is capable of being hidden, (2) a transmitter unit associated with the hidden object, and (3) a seeker unit containing a receiver and a means for calculating the distance between the seeker unit and the transmitter unit and differences in that distance. Specifically, Claim 9 of the '457 patent discloses, in relevant part, "said seeker unit comprising a calculating means for determining a first distance between the seeker unit and said object, a second distance between said seeker unit and said object, and a relative change in distance[.]" (Doc. 15, Exh. 1, p. 10).

Defendants interpret the "calculating means" element as a means-plus-function limitation. Plaintiffs assert that Claim 9 "is not concerned with the how or the means of calculating a distance[.]" (Doc. 69, p. 10). Rather, "the claimed invention simply requires that the game determine at least a first and a second distance and determine a relative chance in distance." *Id.*

"[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Id*. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) for the

6

holding that the claims did "not require elaborate interpretation").

The language of Claim 9 does not involve terms of art and lends itself to ready interpretation by lay judges. As discussed above, the Claim 9 element at issue requires that there be a means for "determining a first distance between the seeker unit and said object, a second distance between said seeker unit and said object, and a relative change in distance." (Doc. 15, Exh. 1, p. 10). Claim 9 contains no language as to how the distances are determined or compared or what specific transmitter-receiver technology is used to make those calculations. Rather, the ordinary meaning of Claim 9's plain language describes a function of a device that determines a first distance between a receiver and a transmitter, a subsequent distance between the receiver and a transmitter, and whether that distance has increased or decreased. Claims 1 and 7 of the '457 patent also support this interpretation of Claim 9 in discussing the determination of a first distance, a second distance, and "comparing said first distance to said second distance to determine a change in distance, and whether said second distance is greater or less than said first distance." *Id*. Neither party submits evidence that contradicts this interpretation. Therefore, this Court construes the portion of Claim 9 at issue here as a function limitation whereby a device determines a first distance between a receiver and a transmitter, a subsequent distance between the receiver and a transmitter, and whether the second distance is greater or less than said first distance.

### a. Prior Art

Plaintiffs state in their '457 patent that "[a] number of modern variations of the game of hide and seek have been developed and/or patented to incorporate modern electronic technology into devices to be used to play the game." (Doc. 15, Exh. 1, p. 5). However, Plaintiffs only referenced two prior art patents in their application for the '457 patent. Defendant submitted a number of patents that relate to Plaintiffs' '457 patent and allegedly render Claim 9's "calculating means" element invalid as obvious.

U.S. Patent 4,935,907 to Mark B. Friedman ("Friedman patent") was filed in 1988 and describes an electronic homing system. The Friedman patent describes its invention as "[a] homing system for directing the user (human or mobile robot) to one of a plurality of objects and/or locations[.]" (Doc. 72, Exh. 9, p. 5). "The remote modules are placed with objects or at locations to which the system user may desire to be led." *Id*. "Typically, the mobile unit is designed to be hand

1  held and has a handle." *Id*. "A programmed digital microchip computer generates an internal
2  representation of the distance between the receiving transducer and the selected remote module[.]" *Id*.
3  "The computer compares subsequent representations of the distances to determine if the mobile
4  module is moving closer or farther away from the selected remote module." *Id*. "The mobile module
5  includes an indicator for indicating to the user whether the distance to the selected remote module is
6  increasing or decreasing as the mobile module is moved." *Id*.

7  Specifically, independent Claim 1 of the Friedman patent discloses "[a] homing system for
8  directing the user to one of a plurality of locations comprising … a mobile module comprising …
9  means for generating an internal representation of the distance between the receiving means and the
10 selected module[,] … means for comparing subsequent representations of the distances, [and] output
11 means indicating to the user whether the distance is increasing or decreasing continuously as the
12 mobile module is moved[.]" *Id*. at p. 10.

13 U.S. Patent 6,344,797 to Hosny ("Hosny patent") was issued in 1999 and relates to a digital
14 electronic locater. Claims 1, 3, 4, 14, 16, and 17 of the Hosny patent disclose "[a]n apparatus for
15 locating an object/animal/person within a vast area, comprising a portable transmitter unit carried by
16 the searcher or locator and an object/animal mounted or person carried receiver unit … wherein said
17 receiver unit audio and visual alerting means intensity increases as the searcher comes closer to an
18 object/animal/person … being located." (Doc. 72, Exh. 6, pp. 13-14).

19 Plaintiffs name U.S. Patent 6,311,982 to Lebensfeld ("Lebensfeld patent") as a cited
20 reference in their '457 patent. U.S. Patent No. 6,311,982 (filed Feb. 7, 2000). The Lebensfeld patent
21 relates to a "hide and find toy game" using wireless transmitter and receiver technology. *Id*. Claim 1
22 of the Lebenfeld patent discloses "a first game element to be hidden in a play area" and "a second,
23 portable game element to be carried by a player," where one game element incorporates a wireless
24 transmitter and one game element incorporates a wireless receiver. *Id*. Claim 2 of the Lebensfeld
25 patent discloses "the second portable game element including a wireless receiver having an actuable
26 sound generator to generate a sound informing the player that said second portable game element has
27 been brought closer than a predetermined distance from said first hidden game element[.]" *Id*. Claim
28 3 of the Lebensfeld patent refers to Claim 2 and discloses that "the wireless receiver receives and

compares the transmitted signal with a threshold level to determine whether or not the second portable game element has been brought closer than the predetermined distance from said first hidden game element." *Id.*

### b.      Differences Between Claimed Invention and Prior Art

On its face, the technology claimed in the 1988 Friedman patent appears to cover the invention claimed in the "calculating means" element of Plaintiffs' Claim 9.

The "calculating means" element of Claim 9 describes the function of a game device that calculates "a first distance between the seeker unit and said [hidden] object, a second distance between said seeker unit and said object, and a relative change in distance[.]" (Doc. 15, Exh. 1, p. 10). The prior art in Claim 1 of the Friedman patent, in relevant part, describes the function of a device that "generat[es] an internal representation of the distance between the receiving means and the selected module[,] … compar[es] subsequent representations of the distances, [and] indicat[es] to the user whether the distance is increasing or decreasing continuously as the mobile module is moved[.]" (Doc. 72, Exh. 9, p. 10).  Claim 1 of the Friedman patent therefore discloses a calculating means through which a mobile receiver device determines an initial distance between the receiver unit and the transmitter unit, one or more subsequent distances between the receiver unit and the transmitter unit, and a relative change in that distance. Moreover, Plaintiffs assert and Claim 9's plain language shows that it "is not concerned with the how or the means of calculating a distance[.]"  (Doc. 69, p. 10). Therefore, even if the technology used in the Friedman patent differs from that in the '457 patent, the '457 patent's "calculating means" element is still invalid as obvious because it "simply requires that the [invention] determine at least a first and a second distance and determine a relative chance in distance." *Id*.  Further, like the '457 patent, the Friedman patent's mobile receiver unit indicates to the user whether the distance between the receiver unit and the transmitter unit is increasing or decreasing as user moves the mobile receiver unit.

Plaintiffs' only argument in opposition to this is an attempt to distinguish the Friedman patent by arguing that, unlike the Friedman patent, Plaintiffs' '457 patent "discloses how to use known methods of determining distances using a transmitter, a receiver, and a computing device in order to make an enhanced Hide 'N Seek game." (Doc. 81, p. 22). However, Plaintiffs' claim in this action is

that Defendant's Care Bear doll infringes on the "calculating means" element of Claim 9.[2] In fact, Plaintiffs' arguments and evidence in its summary adjudication filings focus on the technical functionality of Defendant's product to show that the mobile receiver unit incorporated in the Care Bear doll determines a first, a second distance, and a relative chance in distance, and therefore infringes the "calculating means" element of Claim 9 of the '457 patent. As discussed above, the Friedman patent renders the "calculating means" element obvious if not duplicative.

Plaintiffs at no point claim that Defendant infringes Plaintiffs' application of known transmitter-receiver technology to make an enhanced hide-and-seek game. As Plaintiffs themselves acknowledge in their '457 patent, "[a] number of modern variations of the game of hide and seek have been developed and/or patented to incorporate modern electronic technology into devices to be used to play the game." (Doc. 15, Exh. 1, p. 5). Further, Plaintiffs gain no ground by pointing out that their patent pertains to a hide-and-seek game while the Friedman patent does not. As the Federal Circuit has made clear, "[t]he scope of what is taught by a prior art apparatus extends not only to the apparatus itself, but also to the obvious methods of use suggested by the structure of that apparatus." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1375 (Fed. Cir. 2003) (citing *In re Lonardo*, 119 F.3d 960, 968 (Fed. Cir. 1997)).

          **c.**      **Other *Graham* Factors**

The determination of obviousness also involves findings as to the level of ordinary skill in the art and any relevant secondary considerations, including commercial success, long felt but unsolved needs, and failure of others. *Graham*, 383 U.S. at 17.

"To determine the level of ordinary skill in the art, courts must consider the educational level of the inventor, the educational level of those who work in the relevant industry, and the sophistication of the technology involved." *Tokyo Keiso Co., Ltd. v. SMC Corp.*, 533 F. Supp. 2d 1047, 1059 (C.D. Cal. 2007) *aff'd*, 307 F. App'x 446 (Fed. Cir. 2009) (citing *Ryko Mfg. Co. v. Nu–Star, Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991)). The parties make no arguments and submit no evidence as to the educational level either of the inventors or of those who work in the relevant industry. Defendant

---

[2] It appears that Plaintiffs attempt to claim Defendant's product infringed on a functionality element of Plaintiffs' patent while admitting that said function is a "known method" of determining distances using a transmitter-receiver technology. (Doc. 81, p. 22).

10

submitted patents that allegedly relate to the technology involved in Claim 9 of Plaintiffs' '457 patent. A review of those patents show the technology involved in Claim 9 to be relatively rudimentary. Most if not all of the related patents describe technology that is more sophisticated than the technology involved in Claim 9. For example, the digital electronic locater described in the Hosny patent uses transmitter-receiver technology not only to alert the searcher as he or she gets closer to the object being located, but also to "provide information to the searcher regarding the direction of an object/animal/person" being located as well as to "provide information to the person being searched regarding the direction of the searcher" where the object being located is a person. (Doc. 72, Exh. 6, p. 10). Further, Plaintiffs themselves acknowledge that the '457 patent involves only "known methods of determining distances using a transmitter, a receiver, and a computing device[.]" (Doc. 81, p. 22). Therefore, this factor weighs in favor of obviousness.

The parties make no arguments and submit no evidence about the commercial success of Plaintiffs' invention or the failure of others. Plaintiffs attempt to argue that their invention solves a problem of adults having to play hide-and-seek with children by enabling the game to be played by one player once the toy is hidden. (Doc. 15, Exh. 1, p. 6). However, the application of the technology described in many of the related patents to a hide-and-seek game also would enable a single player to seek the hidden object or objects once they are hidden. In fact, the Friedman patent's invention not only would allow the game to be played by just a seeker once the object is hidden, but also would allow the game to be played by just a "mobile robot." (Doc. 72, Exh. 9, p. 5). Therefore, this factor is insignificant to the obviousness analysis here. To the extent it holds any weight, it weighs in favor of a finding of obviousness.

Because an analysis of the *Graham* factors shows by clear and convincing evidence that the Plaintiffs' patent as to Claim 9's "calculating means" element is obvious, the '457 patent as to that element is invalid. In light of the patent's invalidity, the parties' arguments and evidence show no genuine issue of material fact as to Plaintiffs' infringement claims that necessitates a trial. Therefore, Plaintiffs' motion for summary adjudication is DENIED and Defendant's motion for summary adjudication is GRANTED.

        **2.**      **Direct Infringement**

Defendant as a matter of law does not infringe on Plaintiffs' patent as to the "calculating means" element of Claim 9 because Plaintiffs' patent as to that element is invalid. However, even if Plaintiffs' patent as to the "calculating means" element is valid, Plaintiffs nonetheless fail to show that Defendant's product infringes upon it.

"[L]iteral infringement requires a showing that every limitation of at least one claim 'reads on' or covers the accused device[.]" *Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1154-55 (W.D. Wash. 2008) (citing *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988)). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995); *see also*, *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994) ("For literal infringement, each limitation of the claim must be met by the accused device exactly, any deviation from the claim precluding a finding of infringement."). "Accordingly, a claim cannot be literally infringed if any claim element or limitation is missing entirely from the accused product." *Veritas*, 562 F. Supp. 2d at 1155 (citing *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991).

Infringement under the doctrine of equivalents requires "that the fact finder determine whether differences between particular elements of the accused device and the asserted claims are insubstantial." *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1467 (Fed. Cir. 1998) (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 117 S.Ct. 1040, 1054, (1997)); *see also*, *Alpex Computer Corp. v. Nintendo Co. Ltd.*, 102 F.3d 1214, 1222 (Fed. Cir. 1996) ("Under § 112, the concern is whether the accused device, which performs the claimed function, has the same or an equivalent structure as the structure described in the specification corresponding to the claim's means. Under the doctrine of equivalents, on the other hand, the question is whether the accused device is only insubstantially different than the claimed device.") (internal citations omitted). "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609 (1950).

As discussed above, the element of Claim 9 at issue here is a function limitation whereby a

device determines a first distance between a receiver and a transmitter, a subsequent distance between the receiver and a transmitter, and whether the second distance is greater or less than said first distance. Defendant's Care Bear Doll, however, uses transmitter-receiver technology to determine whether the receiver is within a predetermined distance of the transmitter. (Doc. 80, Exh. A, p. 9). Unlike the function described in Claim 9, Defendant's toy cannot and does not determine whether a subsequent distance between the transmitter and the receiver is greater or less than an initial distance between the transmitter and the receiver unless the receiver moves across one of two boundaries of the predetermined distances. (Doc. 80, Exh. A, pp. 15-16) ("The voice messages do not appear to have any correlation to the distance the Finder is from the Secret Bear as long as the Finder is greater than 20 feet from the Secret Bear […] The voice messages and the light blink rate do not appear to have any correlation to the distance the Finder is from the Secret Bear as long as the Finder is within the 3 to 20 feet range from the Secret Bear."). In fact, this function of Defendant's toy seems similar, if not identical, to the function described in Claims 1, 2, and 3 of the Lebensfeld patent, which Plaintiffs name as a cited reference in their '457 patent. As discussed above, the Lebensfeld patent also relates to a hide-and-seek game using wireless transmitter-receiver technology where "the wireless receiver receives and compares the transmitted signal with a threshold level to determine whether or not the second portable game element has been brought closer than the predetermined distance from said first hidden game element." By contrast, Claim 9 of the '457 patent makes no use of and has nothing to do with predetermined distances. Whereas Defendant's toy and the Lebensfeld patent allow the user to locate the hidden object by alerting the user when the user crosses a boundary of predetermined distance from the object, Plaintiffs' patent allows the user to locate the hidden object by informing the user whether the user has moved closer to or farther away from the hidden object whenever the user moves.

Therefore, Defendant's Care Bear toy does not literally infringe on and has substantial differences in function from Claim 9 of Plaintiffs' patent even if Plaintiffs held a valid patent to Claim 9.

### 3. Motion to Amend

Plaintiffs also seek leave from the Court to amend the operative complaint. However,

Plaintiffs fail to show that their proposed amendment meets the federal standard for obtaining discretionary leave to amend.

"It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Federal procedure states that leave to amend shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182. District courts may not "outright refus[e] to grant the leave without any justifying reason appearing for the denial." *Id*.

As discussed above, the operative complaint does not allege that Defendants directly infringed Claim 1 of Plaintiffs' '457 patent, but Plaintiffs move for summary judgment as to direct infringement of Claims 1 and 9. In their motion to amend the complaint, Plaintiffs state that they seek leave to file a second amended complaint "primarily to clarify the Court's confusion as to why Claim No. 1 was included in Plaintiff's Motion for Summary Judgment." (Doc. 87, p. 2).

Counsel misrepresents the nature, extent, and purpose of the proposed amendment to the Court. The Proposed Second Amended Complaint shows that counsel seeks to add not only direct infringement claims as to Claim 1 but also direct infringement claims as to each of the fifteen Claims contained in the '457 patent as well as a cause of action for inducement of infringement as to each of the fifteen Claims contained in the '457 patent under 35 U.S.C. § 271(b) and a cause of action for contributory infringement under 35 U.S.C. § 271(c). (Doc. 87, Exh. A, pp. 9-13).

### i. Prejudice to Opposing Party

"'Undue prejudice' means substantial prejudice or substantial negative effect[.]" *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002). "[T]he Ninth Circuit has found such substantial prejudice where the claims sought to be added 'would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.'" *Id*. (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d

1074, 1079 (9th Cir. 1990). "[T]he resulting prejudice to the opposing party is by far the most important and most common reason for upholding a district court's decision to deny leave to amend." *In re Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal. 1997) (citing *Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1316 (8th Cir. 1990); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973)).

Plaintiffs argue that Defendant would not be prejudiced by the amendment. According to Plaintiffs, the amendment would not result in prejudice to Defendant because "[s]ince the outset of this case, Plaintiffs have pled that there are issues relating to Jakks having directly infringed, either literally or under the doctrine of equivalents, and continuing to directly infringe on Patent No. '457." (Doc. 87, p. 7). However, as discussed above, the Proposed Second Amended Complaint adds two entirely new causes of action that are not direct infringement and require substantively different analyses.

Plaintiffs further argue that "it is patently evident that Jakks will not suffer undue prejudice from the filing of Plaintiffs' Second Amended Complaint because … the specific elements of each claim are listed in the First Amended Complaint, Proposed Second Amended Complaint AND specifically laid out in Plaintiffs' Motion for Summary Judgment[.]" Counsel again misstates the facts before the Court. The first amended complaint and Plaintiffs' summary judgment filings only discuss direct infringement as to no more than two of the Claims in the '457 patent. Nowhere in the operative complaint or in the summary judgment filings does either party mention or analyze inducement of infringement, contributory infringement, or direct infringement as to the remaining thirteen Claims in the '457 patent. Plaintiffs' arguments as to a complaint that was never filed are meritless. Further, "[t]he prejudice to the opposing party is greater where the tardy amendment will require a reopening of discovery." *C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1199 (C.D. Cal. 2009) *aff'd sub nom., C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975 (9th Cir. 2011).

Because this amendment would result in "substantial negative effect" to Defendant by substantially expanding the issues in this litigation and requiring Defendant to undertake a new course to defense to address thirteen additional Claims and two entirely new causes of action at this late hour, granting Plaintiffs' motion to amend would unduly prejudice Defendant. *SAES*, 219 F. Supp. 2d at 1086. This factor weighs heavily against granting Plaintiffs' motion. *In re Circuit Breaker Litig.*, 175

F.R.D. at 551.

### ii. Futility

Even if Plaintiffs actually seek to amend the operative complaint only to include a direct infringement claim as to Claim 1 of the '457 patent as Plaintiffs' motion suggests, the amendment would be futile.

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citing *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986)). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Id.* (citing *Baker v. Pacific Far East Lines, Inc.*, 451 F.Supp. 84, 89 (N.D. Cal. 1978); *see generally*, 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974) (stating that the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)).

Amending the operative complaint to include direct infringement allegations as to Claim 1 of the '457 patent is futile because Plaintiffs cannot overcome the obviousness of Claim 1 or Defendant's non-infringement of Claim 1.

Claim 1, like Claim 9, lends itself to ready interpretation by lay judges. *Phillips*, 415 F.3d at 1314. Claim 1 discloses, in substantial part, "[a] method for playing an enhanced hide and seek game … comprising the steps of … determining a first distance between said seeker unit and said transmitter unit; determining a second distance between said seeker unit and said transmitter unit; comparing said second distance to said first distance to determine a change in distance and whether said second distance is great or less than said first distance; [and] communicating a game message from said seeker unit to the game participant regarding said change in distance[.]" (Doc. 15, Exh. 1, p. 10).

Prior art patents currently before the Court render Claim 1 obvious if not duplicative. The Friedman patent discloses locating an object through a homing system where a device "generat[es] an internal representation of the distance between the receiving means and the selected module[,] … compar[es] subsequent representations of the distances, [and] indicat[es] to the user whether the distance is increasing or decreasing continuously as the mobile module is moved[.]" (Doc. 72, Exh. 9,

p. 5). The Hosny patent discloses "[a]n apparatus for locating an object/animal/person within a vast area, comprising a portable transmitter unit carried by the searcher or locator and an object/animal mounted or person carried receiver unit … wherein said receiver unit audio and visual alerting means intensity increases as the searcher comes closer to an object/animal/person … being located." (Doc. 72, Exh. 6, pp. 13-14). These patents on their face cover the invention described in Claim 1. Further, as discussed above, related prior art patents describe technology that is generally more sophisticated than, but at least as sophisticated as, the technology involved in Claim 1 of the '457 patent. No set of facts that would render Claim 1 of Plaintiffs' patent non-obvious. In fact, the submission of additional related prior art patents only would render Claim 1 more, not less, obvious.

Like Claim 9, Claim 1 also is not subject to direct infringement by Defendant's Care Bear doll through either literal infringement or the doctrine of equivalents. The above analysis of Claim 9's non-infringement applies to Claim 1 as well. Unlike the invention described in Claim 1, Defendant's toy cannot and does not determine whether a subsequent distance between the transmitter and the receiver is greater or less than an initial distance between the transmitter and the receiver unless the receiver moves across one of two boundaries of the predetermined distances. (Doc. 80, Exh. A, pp. 15-16). By contrast, Claim 1 of the '457 patent makes no use of and has nothing to do with predetermined distances. Whereas Defendant's toy and the Lebensfeld patent allow the user to locate the hidden object by alerting the user when the user crosses a boundary of predetermined distance from the object, Claim 9 and Claim 1 of Plaintiffs' patent allow the user to locate the hidden object by informing the user whether the user has moved closer to or farther away from the hidden object whenever the user moves. Therefore, no set of facts could be proved to constitute a valid and sufficient claim that Defendant's Care Bear toy literally or by doctrine of equivalents infringes on Claim 1 of Plaintiffs' patent even if Plaintiffs held a valid patent to Claim 1.

### iii. Other Factors

Under *Forman*, districts courts also may consider undue delay and dilatory motive by the moving party in assessing motions to amend. *Foman*, 371 U.S. at 182. Here, Plaintiffs seek to file a nearly completely new operative complaint some two years after filing their original complaint, after the parties engaged in discovery and fully briefed the summary judgment proceeding from both sides,

1  and after this Court was well into adjudication of the summary judgment proceedings. "[T]he delay of
2  nearly two years [after filing the original complaint], while not alone enough to support denial, is
3  nevertheless relevant." *Morongo*, 893 F.2d at 1079 (citing *Loehr v. Ventura County Community
4  College Dist.*, 743 F.2d 1310, 1319–20 (9th Cir. 1984)).

5      In addition to the *Forman* factors stated above, "it is appropriate for the court to consider
6  judicial economy and the most expeditious way to dispose of the merits of the litigation." *Dussouy v.
7  Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (citing *Zenith Radio v. Hazeltine Research*,
8  401 U.S. 321, 329 (1971)). This concern is especially pertinent here, as this Court routinely advises
9  counsel and parties that "[j]udges in the Eastern District of California carry the heaviest caseload in the
10 nation, and this Court is unable to devote inordinate time and resources to individual cases and
11 matters." Preliminary Statement to Parties and Counsel, *supra*.

12     Moreoever, while Plaintiffs do not exhibit a dilatory motive in seeking to amend their
13 complaint, they also offer no explanation, other than counsel's admitted negligence, for their delay in
14 filing their motion to amend.

15     Because allowing Plaintiffs to submit their Proposed Second Amended Complaint would
16 result in undue prejudice to Defendant, cause undue delay, and is contrary to judicial economy, and
17 because allowing Plaintiffs to amend their complaint to include direct infringement allegations as to
18 Claim 1 would be futile, Plaintiffs' motion for leave to amend the operative complaint is DENIED
19 WITH PREJUDICE.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DENIES Plaintiffs Conte and Reichman's motion for summary judgment as to the causes of action in the first amended complaint;

2. GRANTS Defendant Jakks' motion for summary judgment as to the causes of action in the first amended complaint;

3. DENIES WITH PREJUDICE Plaintiffs Conte and Reichman's motion for leave to amend the first amended complaint;

4. ORDERS the Clerk of Court to enter judgment pursuant to Fed. R. Civ. P. 54(b) in favor of

Defendant Jakks and against Plaintiffs Conte and Reichman as to each cause of action in Plaintiffs' first amended complaint as the Court determines that there is no just reason for delay; and

5. ORDERS Counsel for Jakks by 5:00 PM on November 6, 2013 to file a status statement concerning its intent regarding the common law counterclaims. If the intent is to proceed to trial, serious consideration should be given by all parties to consent to Magistrate Judge adjudication and jurisdiction. This case is the fourth of five trials set for trial on December 10, 2013. This, and all other trials set before the District Judge will **trail** until the Court becomes available and will not be continued. Magistrate Judge consent cures the counsel calendar concern.

IT IS SO ORDERED.

Dated:  **November 5, 2013**              /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE